IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BEATRICE BELCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv432-C |
| ) | (WO) |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

Plaintiff Beatrice Belcher ("Belcher") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a partially favorable decision, concluding that the plaintiff was disabled on August 1, 2003. (R. 22). The ALJ, therefore, granted Belcher's claim for supplemental security income benefits but denied her claim for disability insurance benefits because her insured status expired on December 31, 2002. (R. 17). The Appeals Council rejected a subsequent request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social

Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Belcher was 43 years old on the date the ALJ concluded she was disabled, August 1, 2003. She has a high school education. (R. 17). The plaintiff's prior work experience includes

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

work as an assembler and a line worker. (*Id.*). Following the hearing, the ALJ concluded that the plaintiff had no severe impairment at any time prior to and on December 31, 2002. (R. 19). He further concluded that the plaintiff has had a severe neurodegenerative impairment since August 1, 2003. (R. 22). For the purposes of supplemental security income benefits, the ALJ concluded that the plaintiff has been under a disability since August 1, 2003, but not before that date. (*Id.*). Thus, the ALJ concluded that while the plaintiff was not disabled when her insured status expired on December 31, 2002, she is now disabled and entitled to supplemental security income benefits. (R. 22-23).

## IV. Statement of the Issues

As stated by the plaintiff, she presents the following issues for the Court's review:

1. Whether the ALJ erred by failing to find that Ms. Belcher's neuromuscular degenerative disorder is a severe impairment even one month prior to the date he found it disabling.

2. Whether the ALJ erred by failing to obtain the advice of a medical expert regarding the onset date of disability.

3. Whether the ALJ erred by substituting his opinion for that of a medical professional.

4. Whether the ALJ erred by failing to order a consultative examination.

5. Whether the hearing transcript contains numerous inaudibles requiring remand.

## V. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to

her past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

    **A.  Onset of Neurodegenerative Disease**.  The plaintiff's first three issues all relate to the ALJ's finding that her neuromuscular degenerative disorder was neither a severe impairment nor was it disabling prior to August 1, 2003.  Consequently, the court considers these three issues collctively.  The plaintiff argues that the ALJ erred in failing to find that her condition was severe or disabling prior to August 1, 2003.  To that end, the plaintiff argues that the ALJ substituted his judgment for that of a medical professional, and he should have used a medical expert to establish the onset date.  After careful review of the record, the court concludes that substantial evidence supports the ALJ's decision that Belcher's condition was not severe or disabling when her disability insurance status expired on December 31, 2002.

    The plaintiff initially alleged a disability onset date of August 31, 1997, the date on which she was fired from her job.  (R. 21, 58, 75, 87, 91).  The plaintiff's insured status for Title II benefits expired on December 31, 2002.  The ALJ concluded that, "the evidence simply does not support any reasonable onset date earlier than August 1, 2003,  the date on which the claimant described the recent development of neurological symptoms to Dr. Dyess."  (R. 21).

The court evaluates the medical evidence in the record to determine whether substantial evidence supports the ALJ's determination that the earliest date of onset of the plaintiff's disabling impairments is August 1, 2003.  The first medical report in the record indicates that Belcher underwent a consultative examination by Dr. Keith Vanderzyl on February 2, 1998.  (R. 127).   At that time, the plaintiff reported that she had a familial history of Olivopontocerebellum degenerative disease[4] which caused her to occasionally lose her balance.  (*Id*.)  Dr. Vanderzyl noted that Belcher had full range of motion in her fingers, wrists, elbows, shoulder girdles, cervical spine, dorsal spine and lumbar spine.  (*Id*.)  He also found that her cranial nerves were intact.  Although she had "what appear[ed] to be very diminished overall reflexes in the upper and lower extremities," she showed "no signs of any cerebellar dysfunctioning or dysconesias of any type." (*Id*.)  Her stance and gait were normal.  There were "[n]o signs of any posterior column dysfunction" or "any extrapyramindal tract dysfunction." (*Id*.)  Dr. Vanderzyl opined that Belcher was a "healthy appearing female with a strong family history of Ol. Ponto cerebellar degeneration to include her mother, her sister and her brother." (R. 128).  However, Dr. Vanderzyl saw "no evidence at the current time that she has a (sic) symptoms of the disease." (*Id*.)

On July 12, 1999, the Coffee County Health Department determined that the plaintiff was pregnant. (R. 137).  She received pre-natal care from the Health Department until her daughter

---

[4] Olivopontocerebellar degenerative disease is a neurodegenerative illness that causes certain brain areas (which may include the olivary nucleus, the pons, and the cerebellum) to shrink. http://www.nlm.nih.gov/medlineplus/ency/article/000758.htm#Definition

was born on October 20, 1999. (*Id.*) She also received some post-natal care. (R. 136-37).

On November 8, 2001, the plaintiff presented to Dr. Dyess complaining about a problem with her ear.[5] Dr. Dyess diagnosed Belcher with subacute right ear otitis, obesity, and chronic wax build-up in ear canal.[6] (R. 131)

On March 23, 2003, the plaintiff underwent another consultative evaluation, this time by Dr. Vijay Vyas. (R. 132). At this evaluation, Belcher complained of dizziness, back pain, ear infections and loss of balance. (*Id.*). She also reported that other people told her that she had slurred speech. (R. 133). She denied that she was depressed. (*Id.*) Although there was "a suggestion of trace edema," there was no pitting. (*Id.*) Dr. Vyas noted that Belcher's neurological condition was "[c]ompletely normal. There is no neurological deficit." (R. 134).

On August 1, 2003, the plaintiff was seen by Dr. Dyess. (R. 138). At that time, Dr. Dyess noted that the plaintiff reported she was unable to work because she had cramps in her legs and difficulty ambulating. (*Id.*) Dr. Dyess' notes indicate that Belcher "reports *recently symptoms began to develop*." (*Id.*) (emphasis added). Dr. Dyess diagnosed the plaintiff as suffering from neuromuscular degeneration and referred her the University of Alabama at Birmingham's Neurology Department. (*Id.*)

On October 28, 2003, the plaintiff was seen by Dr. Dyess who noted that she was now suffering from ataxia, blurring vision and slurred speech. (R. 142). On November 25, 2003,

---

[5] Dr. Dyess' treatment note indicates Belcher complained "feels spider in ear, bites." (R. 131)

[6] Dr. Dyess' treatment note also indicates "borderline P illness." The plaintiff argues that this notation translates into "borderline psychiatric illness" necessitating a psychological evaluation. (Pl's Br. at 10).

the plaintiff was seen by Dr. Hewitt Ryan at the UAB Neurology Department. After examination, Dr. Ryan offered the following opinions.

> Possible neurodegenerative condition. She has a history of gait disturbance with dysartheria and difficulty with writting (sic) of long standing. On exam, however, the quality of findings are not typical for olivopontocerebellar atrophy or spinocerebellar ataxia. I am somewhat concerned that there may be some functional overlay to her exam, but this is difficult to exclude the possibility of a neurodegenerative condition given her strong family history. The age of onset of symtpoms (sic) is compatible with a autosomal dominant OPCA or SCA syndrome. Mrs. Belcher's symptoms may yet be early, and may need to observe for progression.

(R. 150). An MRI on December 12, 2003, demonstrated that the plaintiff has "moderately severe generalized cerebellar atrophy with mild enlargement of the fourth ventricle." (R. 152).

While it is the plaintiff's burden to establish precisely the onset date of disability, it is clear that the law does not define the onset date by the date upon which the plaintiff becomes totally incapacitated. The plaintiff alleges a disability onset date prior to August 1, 2003. In her initial application for disability benefits, Belcher alleges an onset date of August 31, 1997. (R. 58). Her insured status for Title II benefits expired on December 31, 2002. However, the plaintiff did not begin to report symptoms consistent with neurodegenerative disease until shortly before August 1, 2003. In reviewing the record in this case, it appears that the plaintiff complained to Dr. Dyess of symptoms that indicated she was developing neurodegenerative disease in August 2003. Prior consultative examinations found no evidence of any neurological problems prior to this date. Consequently, there is no evidence in the record to support a finding that the plaintiff's neurodegenerative disease was disabling prior to December 31, 2002, the date her insured status expired. Thus, substantial evidence supports the ALJ conclusion that

the plaintiff's condition did not rise to the level of disability prior to August 1, 2003.

To the extent that the plaintiff complains that the ALJ failed to properly credit Dr. Dyess' November 7, 2003, letter regarding her ability to work, she is entitled to no relief. On November 7, 2003, Dr. Dyess wrote the following letter in support of the plaintiff's claim for disability benefits.

> The above-referenced patient has been sporadically seen in these offices over the last two years. She suffers with a severe neuromuscular degenerative disorder of undetermined origin. It is familial, and is devastating to the patient's health. She has progressively deteriorated in the last two years, so much so, that she is now totally and irreversibly disabled.
>
> Ms. Belcher can barely stand or ambulate. She is struggling with decreasing visual acuity as well. She has been referred to Neurology at UAB, but other family members so referred have not fared well. She is in severe need of Disability assistance in order to meet financial obligations, as well as to enable her to pursue advanced medical care. Ms. Belcher's condition is expected to be terminal, and as such, prevents her from suitability for any rehabilitation programs.

(R. 140).

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).

In the instant action, Dr. Dyess' conclusions are not supported by his own records. First, by his own admission, Dr. Dyess saw Belcher sporadically over the past several years. Next,

Dr. Dyess noted on August 1, 2003, that Belcher's symptoms had recently developed. (R. 138). There are no other records to indicate that any of the plaintiff's symptoms were evident prior to that date. Although Dr. Dyess opines that Belcher's physical health has "progressively deteriorated in the last two years," there is no support in the medical records for this opinion. For example, in February 1998, Dr. Vanderzyl recognized that while Belcher had a strong family history of Olivopontocerebellum degenerative disease, there was "no evidence at the current time that she has a (sic) symptoms of the disease." (*Id*.) Then in March 2003, Dr Vyas noted that Belcher's neurological condition was "[c]ompletely normal. There is no neurological deficit." (R. 134). Consequently, the court concludes that Dr. Dyess' November 7, 2003, letter is insufficient to establish that Belcher was disabled before August 1, 2003 because his opinions are not supported by the medical evidence of record.

**B.  Consultative Examination**.  The plaintiff argues that the ALJ erred by failing to order a consultative psychiatric or psychological examination.  In considering a disability claim, the ALJ must fully and fairly develop the facts, including ordering a consultative examination if necessary to make an informed decision. *See Reeves v. Heckler*, 734 F.2d 519, 522 (11th Cir. 1984); *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. Unit B 1981). The ALJ is not required to order a consultative examination unless the record demonstrates that an examination is necessary for the ALJ to render a decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988).  The regulations do not require the Commissioner to secure a consultative evaluation, nor do they create a right to a consultative  examination.

The plaintiff argues that the ALJ erred by failing to order a psychological evaluation

because she noted on her June 5, 2003, Reconsideration Disability Report that she has "been very depress (sic)." (R. 103). Belcher also relies on a November 8, 2001, notation from Dr. Dyess indicating "borderline P illness" to support her contention that a psychological evaluation was warranted. (R. 131).

The medical evidence in the record does not support the plaintiff's position. When the plaintiff filed for disability on December 27, 1997, she did not mention depression. (R. 81). When Belcher underwent a consultative evaluation on February 2, 1998, she did not complain about depression to Dr. Vanderzyl. (R. 127). Although Dr. Dyess noted on November 8, 2001, that the plaintiff was suffering from "borderline P illness," he prescribed no medication or treatment for this alleged illness, (R. 131). More importantly, there is no other reference in the medical records that the plaintiff complained to anyone of any psychological problems.

On her December 30, 2002, disability report, Belcher does not mention depression. (R. 74-75). During her March 2003 consultative examination, Belcher specifically denied having any depression. (R. 132-133). The plaintiff's comment on her Reconsideration Disability Report that she was very depressed is taken out of context. Specifically, the plaintiff stated that she was very depressed since her sister's death two weeks earlier. (R. 103). Thus, there is no evidence in the record that the plaintiff's depression was anything other than situationally related to her sister's death. Consequently, the court concludes that this reference is insufficient to demonstrate that a psychological examination was necessary for the ALJ to render an informed decision in this case. On this record, the ALJ did not err by failing to secure a

consultative psychological evaluation.

**C. Hearing Transcript**. Finally, the plaintiff argues that because the hearing transcript contains numerous inaudible sections, this case should be remanded for further proceedings. However, a remand to the Commissioner is not warranted unless the plaintiff shows prejudice. *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985).

> This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision. *See Smith [v. Schweiker,* 677 F.2d 826, 830 (11th Cir. 1982)] (relevant inquiry is whether the record reveals evidentiary gaps which result in unfairness or clear prejudice).

*Id.* at 1540.

A review of the transcript demonstrates that the plaintiff was present and represented by counsel at the administrative hearing held on November 14, 2003. (R. 164-169). The plaintiff complains that, due to inaudible portions of the transcript, she is unable to determine "whether or not the ALJ fulfilled his duty to elicit testimony from Ms. Belcher." (Pl's Br. at 12). First, it is clear that at the administrative hearing, the plaintiff's counsel did not request that the plaintiff testify, nor did counsel object to the ALJ's failure to allow the plaintiff to testify. In fact, it appears from the transcript that the ALJ concluded that the plaintiff was disabled and he was concerned only with the onset date of the plaintiff's disabling condition. (R. 167). The medical evidence in the record demonstrates that the plaintiff was not disabled prior to the date her insured status expired. Consequently, the plaintiff has failed to demonstrate that she has been prejudiced by the inaudible portions of the record.

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the plaintiff failed to establish constitutes a severe impairment for the purpose of receiving disability insurance benefits. The court further concludes that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

A separate final judgment will be entered.

Done this 27th day of September, 2005.

/s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE